**BESHADA FARNESE LLP**
Peter J. Farnese (SBN 251204)
pjf@bfllplaw.com
11601 Wilshire Blvd., Suite 500
Los Angeles, California 90025
Telephone:     310-356-4668
Facsimile:     310-388-1232

Donald A. Beshada, *pro hac vice*
dbeshada@gmail.com
108 Wanaque Ave.
Pompton Lakes, New Jersey 07442
Telephone:     973-831-9910
Facsimile:     973-831-7371

*Attorneys for Defendant,*
*My Pillow, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WUEST, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MY PILLOW, INC. and Does 1-50, inclusive<br><br>Defendants. | CASE NO.:  3:18-CV-03658-WHA<br><br>**CLASS ACTION**<br><br>Judge: Hon. William Alsup<br><br>*REDACTED VERSION*<br><br>**DEFENDANT MY PILLOW INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:         July 11, 2019<br>Time:        8:00 a.m.<br>Crtrm:       12 – 19th Floor<br><br>Removed:    June 19, 2018<br>Trial Date:   March 30, 2020 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION .............................................................................................. 1

SUMMARY OF ARGUMENT ........................................................................... 2

    A.    Plaintiff Wuest Is An Inadequate Class Representative With Atypical Claims 2

        1.    Wuest's Significant Litigation History ..................................................... 2

        2.    Wuest Consented to Being Recorded By My Pillow ............................... 3

    B.    Plaintiff Cannot Establish Commonality or Rule 23(b)(3) Predominance ........ 3

THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA") SECTION 632.7 ............... 4

BRIEF STATEMENT OF RELEVANT FACTS .................................................. 6

    A.    Plaintiff's Litigation History and Individual CIPA Settlements ...................... 6

    B.    Plaintiff's Circumstances with My Pillow .......................................... 7

    C.    My Pillow's VOIP-Based Customer Service and Sales Call System ............... 8

    D.    My Pillow Changes Its Customer Service Greeting On December 27, 2017 ... 8

THE PROPOSED CLASSES ............................................................................ 9

LEGAL STANDARD ...................................................................................... 10

ARGUMENT ................................................................................................. 10

I.    PLAINTIFF CANNOT ESTABLISH THE ADEQUACY OR TYPICALITY PREREQUISTES OF RULE 23(a) ............................................................... 10

    A.    Plaintiff Is Not An Adequate Class Representative ...................................... 10

    B.    Plaintiff's Claims Are Not Typical ............................................................. 13

    C.    Wuest Cannot Represent Customer Service Callers ...................................... 15

D.   Wuest Is Not a Member of the Cordless Class ................................. 16

E.   Summary ...................................................................................... 16

II.   PLAINTIFF FAILS TO ESTABLISH COMMONALITY (RULE 23(a)(2)) OR PREDOMINANCE (RULE 23(B)(3)) ......................................... 17

A.   Individual Issues Predominate As to Consent ................................. 17

B.   CIPA § 632.7 Applies to "Parties" to the Communication ............................ 19

C.   Identifying the Type of Device Used ............................................... 20

D.   Ascertaining the Physical Location of the Caller ............................. 20

E.   "Who Was Connected to a My Pillow representative" ................................... 21

F.   Summary ...................................................................................... 21

III.   PLAINTIFF'S PROPOSED CLASSES ARE NEITHER MANAGEABLE NOR SUPERIOR .............................................................................. 22

A.   A Class Action Is Not Superior ...................................................... 22

B.   The Proposed Class Is Not Manageable ........................................... 23

IV.   THE EXPERT REPORTS ARE NOT HELPFUL FOR CLASS CERTIFICATION ................................................................................. 24

A.   Randall Snyder .............................................................................. 24

B.   Anya Verkhovskaya ....................................................................... 25

CONCLUSION ............................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BESHADA
FARNESE LLP

DEFENDANT MY PILLOW INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Ex. Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013)..................................................................................10

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................17, 18

*Backus v. ConAgra Foods, Inc.*,
    2016 WL 7406505 (N.D. Cal. Dec. 22, 2016). ....................1, 11, 12, 13, 24

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)............................................................................10, 18

*Dominguez v. Yahoo!, Inc.*,
    2017 WL 390267 (E.D. Pa. Jan. 27, 2017) .............................................24

*Gruber v. Yelp, Inc. et al.*,
    Case No. A155063 (Cal. Ct. App. Div. 3).................................................20

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................13

*Hataishi First American Home Buyers Protection Corp.*,
    223 Cal. App 4th 1454 (2014)...................................................................19

*In re Amer. Exp. Steering Rules Antitrust Litig.*,
    2015 WL 4645240 (S.D.N.Y. 2015) ........................................................11

*In Re Google Gmail Litigation*,
    2014 U.S. Dist. LEXIS 36957  (N.D. Cal. Mar. 18, 2014)........................18

*In re Quintus Secs. Litig.*,
    148 F. Supp. 2d 967 (N.D. Cal. 2001).......................................................11

*In re Wells Fargo Home Mortg. Over-time Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009) ....................................................................17

*Kight v. CashCall, Inc.*,
    231 Cal. App. 4th 112 (2014)....................................................................23

*Kline v. Coldwell Banker & Co.*,
    508 F.2d 226 (9th Cir. 1974) ....................................................................22

*Legge v. Nextel Comm'n., Inc.*,
  2004 WL 5235587 (C.D. Cal. Jun. 25, 2004)............................................................22

*Legg v. Voice Media Grp., Inc.*,
  2014 WL 1767097 (S.D. Fla. May 2, 2014)..............................................................24

*Longest v. Green Tree Servicing LLC*,
  308 F.R.D. 310 (C.D. Cal. 2015)..............................................................................13

*Maghen v. Quicken Loans Inc.*,
  94 F. Supp. 3d 1141 (C.D. Cal. 2015).......................................................................14

*Maghen v. Quicken Loans Inc.*,
  680 F. App'x 554 (9th Cir. 2017) ................................................................14, 15, 18

*Marshall v. CBE Grp., Inc.*,
  2018 WL 1567852 (D. Nev. Mar. 30, 2018)..............................................................24

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ....................................................................................10

*McCurley v. Royal Seas Cruises, Inc.*,
  2019 WL 1383804 (S.D. Cal. Mar. 27, 2019)............................................................24

*Mckinnon v. Dollar Thrifty Auto. Grp., Inc.*,
  2016 WL 879784 (N.D. Cal. Mar. 8, 2016) ..............................................................16

*NEI Contracting & Eng'g,Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
  2016 WL 4886933  (S.D. Cal. Sept. 15, 2016) ...............................................14, 15, 18

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ....................................................................................16

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015)..............................................................................13

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996, 1007 (9th Cir. 2018), *cert. dismissed,* 139 S. Ct. 1651 (2019)...............16

*Sanders v. Am. Broad. Cos.*,
  20 Cal. 4th 907 (1999)................................................................................................6

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................................11

*Southwell v. Mortgage Investors Corp. of Ohio, Inc.*,
  2014 WL 3956699 (W.D. Wash. Aug. 12, 2014)......................................................25

*Torres v. Nutrisystem, Inc.,*
    289 F.R.D. 587 (C.D. Cal. 2013)....................................................................17, 18, 19

*Vasquez-Torres v. McGrath's Publick Fish House, Inc.,*
    2007 U.S. Dist. LEXIS 97233 (C.D. Cal. Oct. 12, 2007) ...........................................22

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338, 350 (2011) .................................................................................10, 17

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001). ........................................................................22, 24

## RULES

Cal. R. Ct.
    Rule 3.770.............................................................................................................13

Fed. R. Civ. P.
    23(a)   .....................................................................................10, 11, 16
    23(a)(2).............................................................................................................17
    23(a)(4).............................................................................................................11
    23(b)(3)..........................................................................................2, 10, 22

Fed R. Evid.
    702   .........................................................................................................24

## STATUTES

Cal. Penal Code
    632   ...................................................................................*passim*
    632.7   ...............................................................................*passim*

BESHADA
FARNESE LLP

**INTRODUCTION**

Claims for statutory violations of the California Invasion of Privacy Act ("CIPA") make for the ultimate "gotcha" class actions.  In recent years, clever California plaintiffs' lawyers have used alleged technical violations of CIPA and its substantial statutory penalties of $5,000 per violation to threaten out-of-state companies who record routine customer service calls with ruinous classwide liability in the tens to hundreds of millions of dollars. Although the legislative history indicates that CIPA was never meant to apply to such calls, enterprising plaintiffs have successfully used the specter of catastrophic CIPA penalties to extract lucrative settlements.  The record demonstrates that Plaintiff Richard Wuest ("Plaintiff" or "Wuest") is one of those enterprising plaintiffs, and that this case represents a classic "gotcha" situation.

As to the former, Wuest is eleven-time CIPA "class action" plaintiff who, by his own admission, ███████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ . *See* Farnese Declaration Ex. 1, Deposition of Richard Wuest ("Wuest Depo.") 30:16-23.

As to the latter, since its inception, My Pillow, Inc. ("My Pillow" or the "Company"), always advised customers that their calls "will be recorded and monitored for quality assurance."  The sole exception to that was a limited period of time between late December 2017 and February 2018, when the Company recorded a temporary customer service message as a courtesy to advise its customers of longer than average wait times and inadvertently did not include the "calls are being recorded" statement.  Wuest telephoned the Company during that limited time period and "got" the Company on that oversight, resulting in this class action.

The motion for class certification should be denied.  Simply stated, Wuest cannot satisfy the Rule 23(a) requirements of adequacy, typicality, and commonality, as those requirements are analyzed under, for example, *Backus v. ConAgra Foods, Inc.*, No. CV16-00454 WHA, 2016 WL 7406505 (N.D. Cal. Dec. 22, 2016).  Wuest's (i) extensive litigation history in CIPA cases, (ii) admitted failure to obtain any class benefits (at all) in any of those cases, (iii) particularized knowledge of CIPA, and (iv) knowledge that he was being recorded by My Pillow and his consent thereto, are just a few examples of why he is subject to unique defenses that will occupy the litigation, and undermine his credibility on key issues in this case.  Likewise, Plaintiff cannot establish the Rule 23(b)(3) requirements because, among other things,

1  individualized issues predominate, and a class action is not the superior method to adjudicate this dispute.

2  **SUMMARY OF ARGUMENT**

3      **A.**     **Plaintiff Wuest Is An Inadequate Class Representative With Atypical Claims**

4          **1.**     **Wuest's Significant Litigation History**

5      Wuest is litigious.  In the past two (2) years, alone, he has filed eight (8) class actions, targeting

6  companies ranging from Asseenontvstore.com to PepsiCo for purported CIPA violations.  In those cases

7  (plus 2 additional from years ago), ███████████████████████████████.  As part of these

8  settlements, ██████████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████████████████████████████

10 ██████████ :

| Case | $ for Mr. Wuest | $ for Keller Grover LLP | $ for the Class | Injunctive Relief & Class Notice |
|---|---|---|---|---|
| ██████████████████ | ███ | ███ |  |  |
| ██████████████████ | ███ 0 | ███ $ |  |  |
| ██████████████████ | ███ | ███ |  |  |
| ██████████████████ | ███ | ███ |  |  |
| ██████████████████ | ███ | ███ |  |  |
| ██████████████████ | ███ | ███ |  |  |
| █████████ | ███ | ███ | ██ | ██ |

18 *See* Wuest Depo 30:16-23, Farnese Decl. Ex. 1; 3. ████████████████████████████████████

19 ███████████████████████████████████████████████████████████████████████████████████

20 ███████████████████████████████████████████████████████████████████████████████.[1]

21     Wuest suffers from the exact "shortcomings" that this Court evaluates when assessing a class

22 representative.  *See* Dkt. 11 at ¶1 ("Anyone seeking to represent a class, including a settlement class, must

23 affirmatively meet the Rule 23 standards, including adequacy… Any possible shortcomings in a plaintiff's

24 resume, such as a conflict of interest, a criminal conviction, a prior history of litigiousness, and/or a prior

25 history with counsel, must be disclosed.").  Wuest's litigation history (including his consistent ignorance

26

27 ───────────────

28 [1]   Although he now discusses in his brief a variety of reasons why these cases settled individually, Plaintiff has objected and resisted discovery on these settlement agreements. My Pillow has reserved the right to compel production of those documents.

of the class for his own benefit) makes him inadequate to represent the class here.

### 2.    Wuest Consented to Being Recorded By My Pillow

My Pillow believes that Mr. Wuest was presented with a call recording warning when he called My Pillow's sales number (Mr. Wuest denies hearing a warning). Regardless, the record shows that Wuest consented to being recorded by My Pillow.  On January 22, 2018, the following conversation took place (after Wuest had already called My Pillow twice earlier that day):

> MR. WUEST: Yeah. Actually, I called earlier. I was just wondering, do you guys -
> do you guys record these conversations?
> THE OPERATOR: Do they record conversations? Yes, they do.
> MR. WUEST: Okay. I already placed my order and I'd just like to ask them about
> that. All right. Thanks.
> THE OPERATOR: All right. Thank you.
> MR. WUEST:  Okay.

*See* Wuest Call 2:10-19, Farnese Decl. Ex. 6.  Plaintiff did not protest the recording; he did not say he did not consent to the recording; he did not say that he never received a warning at the outset of the call; nor did he demand that any recordings be destroyed or that My Pillow provide a warning to California cellular callers.  He simply responded: "**Okay… All right. Thanks**."  Thereafter, Wuest called My Pillow three (3) more times after he retained counsel to prosecute this action.

 Simply stated, Wuest either consented to the recording or he simply does not care and can't now claim to be "injured" under the statute.  *See Maghen v. Quicken Loans Inc.,* 94 F. Supp. 3d 1141, 1145 (C.D. Cal. 2015), aff'd in part, dismissed in part, 680 F. Appx. 554 (9th Cir. 2017) ("[C]onsent is a complete defense to a Section 632.7 claim.").[2]  Notwithstanding, Wuest seeks statutory penalties of $5,000 for all of his calls ($25,000 in total),[3] including those calls wherein he knew that he was being recorded, and that occurred after he had retained counsel.  Not a "typical" set of circumstances compared to the proposed classes.

### B.    Plaintiff Cannot Establish Commonality or Rule 23(b)(3) Predominance

Plaintiff's motion must be denied because common issues for the proposed class (and cellular and cordless subclasses) do not predominate over the highly-individualized inquiry necessary for Section 632.7

---

[2]   Mr. Wuest publicly filed the transcripts of these calls. *See* Dkt. No, 32-5. As such, Mr. Wuest does not believe that that these conversations were private, or confidential in anyway.  But, CIPA section 637.2 requires that a claimant be "injured" to recover penalties. *See also* Wuest Depo. 52:11 – 53:5.

[3]   Plaintiff originally sought compensation for six calls, but because one was a hang up, he now believes that five statutory penalties is "fair".  *See* Wuest Depo at 51:3.

claims, namely:

- First, the *identity* of the *caller* (as opposed to subscriber or account holder) cannot reliably be determined and there is no objective means of ascertaining this information in most instances—and Plaintiff's expert reports concede this fatal defect.

- Second, protection under §632.7 only extends to individuals who *did not consent* to call recording, and consent must be determined on an individual basis from the surrounding facts and circumstances. Wuest's own call history demonstrates the individualized nature of this inquiry.

- Third, for the "cellular" class members, the caller's *physical location* at the time of the call cannot be determined by objective means, and §632.7 only applies to calls made while physically present in California. In addition, the state of residence for each caller cannot be objectively determined without individualized inquiry; §632.7 applies only to California residents.

- Fourth, for the proposed "cordless" class members there is no objective means of determining whether a non-cellular number was a wired landline or a cordless telephone. Individual class member testimony is required.

- Last, whether any class exists to certify given that My Pillow's ("VOIP") call system is not an enumerated device under §632.7.

Plaintiff glosses over each of these issues, but, at a minimum, it is clear that "[t]he issue of whether class members consented to the recordings would [] require a detailed factual inquiry for each class member, likely resulting in varying responses to the consent issue." *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013). For similar reasons, the proposed classes are not superior, nor manageable.  It is clear this action will splinter into a serious of individual trials that completely undermine the purpose of the class action device.

In sum, this case is another attempted moneymaker in Wuest's "side business" of "gotcha" CIPA class filings. It's not about remedying a privacy "crime".  It's about pocketing aggregated statutory penalties of $5,000 per call.  Given the $5,000 statutory penalty, individuals who truly believe their privacy rights have been violated possess sufficient incentives to initiate individual proceedings.  Accordingly, a class action is not a superior means of resolving this dispute and violates basic concepts of fairness and due process.

For the reasons set forth herein, the Court should deny Plaintiff's motion for class certification.

## THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA") SECTION 632.7

Cal. Penal Code § 632.7 is part of California's Invasion of Privacy Act (Penal Code §§ 630 et seq. (hereafter, the "CIPA")). CIPA was enacted in the 1960's in order to "put a stop to unethical industrial

espionage and spying operations in California" and to provide recourse to parties whose "telephone communications have been maliciously invaded by persons not intended to receive those communications." Farnese Decl, Ex. 34 (3/1/67 Press Release from Jesse Unruh, Speaker of the California Assembly and author of Assembly Bill 860). The legislative history indicates that CIPA was not intended to apply to recordings of calls by businesses for quality assurance purposes ("service observing").

First, a June 5, 1967 Senate Digest provides that the statute "will insure that justifiable and regulated use of devices for overhearing employees' business conversations may continue unimpeded. This practice is known as 'service-observing.'" *Id.,* Ex. 35. Second, a June 30, 1967 letter from Jessie Unruh, the sponsor of Section 632, sent in response to criticism of the statute in the San Francisco Chronicle, states that "[u]nder [AB 860], it would continue to be perfectly legal to monitor business calls, to insure proper service of customers by employees." *Id*., Ex. 36. Third, in response to concerns from various businesses that service-observing would have been outlawed by Section 632, Mr. Unruh wrote to then Governor Reagan and stated, "[W]e have exempted from coverage under the measure normal business telephone monitoring, known as 'service-observing', which is essential in modern business practices to insure employee efficiency. As written, Assembly Bill 860 is carefully directed only at clandestine wiretapping and eavesdropping, much of which now takes place in California for a variety of unjustifiable reasons." *Id*., Ex, 37.

The California legislature adopted Section 632.7 in the 1990's, as a result of an incident involving surreptitious recording of a telephone call with a radio scanner. Section 632.7 targeted those using radio scanners to intercept wireless transmissions. *Id*., Ex. 38 (8/23/1991 Letter from Michael S. Sands to Hon. Phil Isenberg and Hon. Lloyd Connelly). The impetus for Section 632.7 was a secret recording by a third party of a call between businessmen interested in buying the Sacramento Kings NBA franchise. RJN Exs. E, F AB 2465, (Author's Statement of Intent). The perpetrator then offered to sell the recording for $200,000. *Id*. Upon learning about this incident, Assembly Member Connelly authored AB 2465, which became Section 632.7. See *Id.*, Exs. 38, 39. According to the Statement of Intent, the statute was necessary because persons using cellular or cordless telephones did not "reasonably anticipate that their conversations will be both intercepted and recorded." *Id*. Ex. 39. Thus, the purpose of Section 632.7 is to remedy the

1   secret interception and recording of a call by third parties.[4]

2     For California residents who are physically present in California, Section 632.7 provides: "[e]very

3   person who, without the consent of all parties to a communication, intercepts or receives and intentionally

4   records. . . a communication transmitted between two cellular radio telephones, a cellular radio telephone

5   and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a

6   cordless telephone and a cellular radio telephone. Cal. Pen. Code § 632.7.[5] Section 637.2 creates a private

7   right of action for violation of CIPA and provides that "Any person who has been injured . . . may bring

8   an action… for the greater of the following amounts: (1) Five thousand dollars ($5,000). [or] (2) Three

9   times the amount of actual damages, if any, sustained by the plaintiff." Cal. Pen. Code § 637.2.

10  **BRIEF STATEMENT OF RELEVANT FACTS**

11  **A.  Plaintiff's Litigation History and Individual CIPA Settlements**

12    Wuest estimates that he has filed at least 16 lawsuits in his life, some in small claims court for

13  things like a roach in his salad at Planet Hollywood or a "lemon" car he purchased. Wuest Depo., 18:1-2.

14  Plaintiff testified that he has extensive knowledge of CIPA since first learning of it in 2009 or 2010, and

15  that he has conducted independent research on his own about the statute. *Id.*, . Since 2012, he has filed at

16  least twelve class actions for statutory violations (eleven for CIPA and one for FACTA violations). Farnese

17  Decl. Exs. 13 – 33. He testified that if he suspects that he did not hear a recording warning when calling a

18  company, he will call back to verify for the purposes of filing a lawsuit. Wuest Depo, 50:1-51:11. In all

19  of these cases, Wuest ████████████████████████████████████████ *Id.*, 35:16-

20  36:7. Plaintiff has refused to produce the settlement agreements or provide details for all these settlements

21  in discovery, but at his deposition, he and his counsel confirmed that ████████████████

22

_____

23  4 On page 6 of his brief, Plaintiff cites to *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907 (1999) to link

24  its "expectation of privacy" language with the purpose of CIPA. But *Sanders* is not a telephone
  recording case. It involved a reporter employed by a television network as a "telepsychic" that secretly

25  recorded her co-workers using a hidden camera in her hat. *See Sanders* at 910. It simply has nothing to
  do with CIPA. But *Sanders*, if it has any applicability here at all, confirms the individualized nature of

26  privacy claims: "Whether a reasonable expectation of privacy is violated by such recording depends on
  the exact nature of the conduct and <u>all</u> the surrounding circumstances." *Sanders* at 911 (emphasis

27  added).
 5 Unlike claims under Penal Code § 632, claims are much broader under § 632.7 because calls need

28  not involve confidential communications. *See* Cal. Penal Code § 632 (applying to the recording of
  "confidential communication[s]").

1 ███████████████████████████████████████████████

2 ██████████████████████████████████████ Wuest Depo 34:11-36:7;

3 Farnese Decl. Exs. 13 - 33.

**B.      Plaintiff's Circumstances with My Pillow**

According to his cell phone bills and testimony, Wuest called My Pillow six times from January 22, 2018 through February 9, 2018. *See* Farnese Decl. Ex. 5; Wuest Depo, 51:12-23. On his first call on January 22, 2018 at approximately 5:15 p.m., Mr. Wuest called My Pillow at 800-544-8939 to inquire about purchasing pillows but was unable to place an order because he did not have his credit card. Wuest Depo, 55:23-57:3. Mr. Wuest heard a prerecorded greeting but cannot recall exactly what was said. Wuest Depo, 55:22-56:16. About an hour later, he called back at 800-544-8939 to place his order. Wuest Depo, 57:6-10; Farnese Decl. Ex. 5. On this call he heard a prerecorded greeting but does not recall exactly what it said. Wuest Depo 58:3-8. At some point during this call, he suspected that the call was being recorded without a warning and called back a third time "to check". Wuest Depo 58:12-13. In this third call to 800-544-8939 on January 22, 2018, the following exchange occurred:

> MR. WUEST: Yeah. Actually, I called earlier. I was just wondering, do you guys -
> do you guys record these conversations?
> THE OPERATOR: Do they record conversations? Yes, they do.
> MR. WUEST: Okay. I already placed my order and I'd just like to ask them about
> that.[6] All right. Thanks.
> THE OPERATOR: All right. Thank you.
> MR. WUEST:  Okay.

*See* Wuest Call #3 2:10-19, Farnese Decl. Ex. 6. Sometime before or on January 29th, Wuest contacted Mr. Grover (███████████████████) to file this lawsuit against My Pillow[7]. Mr. Grover called My Pillow on January 29, 2018 at 800-544-8939 purportedly to verify Mr. Wuest's claims. Farnese Decl., Ex. 11. ████████████████████████████████████████. *Id.* at Ex. 4. The next day, on February 8, 2018, Wuest called My Pillow's customer service number at 800-308-1299. *Id.*, Ex 5. On February 9, 2019, he called again. *Id.*   In these February calls, Mr. Wuest never asked about whether My Pillow was recording the calls (he knew from his third January 22nd call that they were) or to

---

[6]    *See also* Dkt. 32-5. Ms. Somer's transcription states that Mr. Wuest said: "I just forgot to ask'm about that."

[7]    Wuest's retainer agreement also indicates that Steven L. Miller, APC is representing Wuest and sharing in any attorney fee in this case. Farnese Decl., Ex 4. At this stage, it is unclear when Mr. Miller became involved in this matter.

1  protest that a call recording warning was not given at the outset of his call.  *Id.*, Exs. 7-8.  Mr. Wuest filed

2  this action on February 16, 2018 and seeks statutory penalties for all five of his calls to My Pillow where

3  he spoke to a sales or customer service representative. Wuest Depo at 52:6-8. Mr. Wuest originally testified

4  that he knew his calls were being recorded when he called My Pillow's customer service number in

5  February, but later decided to change that testimony:

| Question | Original Answer | Changed Answer |
|---|---|---|
| Q. "At the time you called customer service, you were aware they were recording phone calls; right?" 62:3-4 | A.  When they told me, yeah." 62:5. | Errata: "I was aware they recorded calls to the sales number 800-544-8939. The customer service representative on my calls to 800-308-1299 did not tell me that calls were being recorded." |
| Q.   And then you made subsequent calls after that. So you knew those calls were being recorded?" 62:6-7 | A. "Probably, yeah. Yeah." 62:8 | Errata: "I did not make subsequent calls after my customer service calls on February 8 and 9, 2018. At the time I called the 800-308-1299 customer service number, I knew that My Pillow recorded calls to the 800-544-9039 number." |

12  *See* Farnese Decl. Exs 1, 2.

13  **C.     My Pillow's VOIP-Based Customer Service and Sales Call System**

14      My Pillow's uses a white-label, Voice-Over Internet Protocol ("VOIP") managed voice center

15  system provided by Skyswitch. Farnese Decl. Ex 9; Larson Depo. 11:21 – 14:21.  My Pillow owns

16  approximately 5,000 toll-free numbers, not all of which are in use at any given time. Larson Depo. 16:18

17  – 17:4. Nearly of all of the toll-free numbers are sales numbers that lead to My Pillow's sales queues. *Id*.

18  16:1 – 17:4, 156 .   My Pillow has a single toll-free number (800-308-1299) for customer service that that

19  routes calls to a single customer service queue. *Id*. 32 – 33:3.    The sales queues are answered by sales

20  agents, whereas the customer service queue is answered by customer service agents. At all times up until

21  December 27, 2017, My Pillow's voice system played pre-recorded greetings advising all callers at the

22  beginning of their call that calls are recorded by My Pillow for quality assurance.  Farnese Decl., Ex 10.

23  **D.     My Pillow Changes Its Customer Service Greeting On December 27, 2017**

24      Due to a post-holiday rush for warranty and exchanges, My Pillow's customer service queue

25  became overloaded with customer service calls to Defendant's customer service line (1-800-308-1299).

26  *Id*., Ex 10., Larson Depo, 138:9 – 139:14 As a courtesy to customers, Defendant's CEO recorded a new

27  outgoing message for customer service calls, informing callers of extended wait times. Farnese Decl.,

28  Ex. 10; *Id*. The CEO contacted Mike Larson of Twin City Commworks to implement the new greeting

BESHADA
FARNESE LLP

DEFENDANT MY PILLOW INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

message. *Id*.  Due to an innocent mistake, the new pre-recorded greeting omitted My Pillow's standard advisement that calls are recorded. *Id*.

On December 27, 2017, Mr. Larson uploaded the new greeting message to the customer service queue to be implemented for calls to Defendant's customer service line 1-800-308-1299 only. *Id*., 136:5-13.  The prior greeting message for Defendant's other toll-free numbers was not changed. Farnese Decl. at Ex 10; Larson Depo 136:5-13.  Thus, with the exception of the customer service line (1-800-308-1299), callers to My Pillow's other toll-free number would have heard the advisory that calls are recorded for quality assurance. Farnese Decl. at Ex 10; Larson Depo, 136:8-13.   After all of the post-holiday customer service calls subsided, Defendant's CEO recorded another outgoing message for the customer service line that again advised consumers that calls would be recorded for quality assurance purposes which was implemented on the system beginning February 19, 2018. Farnese Decl. at Ex 10; Larson Depo, 102:8-9.[8]  During the December 27, 2017 – February 19, 2018 time period, My Pillow received 4,478 calls from numbers having a California area code to the customer service line (1-800-308-1299). Farnese Decl. at Ex 10. Of the 4,478 calls, 1,086 calls are associated with telephone numbers that had previously called My Pillow prior to the outgoing message change on December 27, 2017. *Id*., Ex 10.

## THE PROPOSED CLASSES

Plaintiff proposes the following "Class" and four "Sales" and "Customer Service" subclasses:

> A]ll persons who, at any time during the period from December 27, 2017 through February 19, 2018, inclusive, called one or more of My Pillow, Inc.'s ("Defendant") toll-free telephone numbers using a cellular or cordless telephone with a California area code while located within the State of California and who was connected to a My Pillow representative.  (Dkt. 32 at 2-3).

## LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action

---

[8]  Plaintiff levies several accusations about My Pillow's amended and supplemental discovery responses on this issue.  But there was no gamesmanship by My Pillow.  My Pillow's initial responses were subject to the statement that: "Defendant has not completed its investigation of the facts relating to this case…. Defendant reserves the right to change and/or supplement these responses as additional facts are discovered, revealed, recalled or otherwise ascertained, and as further analysis and research disclose additional facts, contentions or legal theories." Farnese Decl. Ex 9.  Additionally, the timing and circumstances support that only the customer service outgoing message was changed—My Pillow uses separate representatives for sales and customer service, and the customer service representatives were swamped after the holidays, not sales. Larson Depo, 138:9 – 139:4.

must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotations and marks omitted). "A party seeking class certification … must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." to satisfy Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Rule does not "establish an entitlement to class proceedings for the vindication of statutory rights" but "imposes stringent requirements for certification that excludes most claims." *Am. Ex. Co. v. Italian Colors Rest*., 133 S. Ct. 2304, 2307 (2013). "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012); *see also Comcast*, 133 S. Ct. at 1432 (holding that, absent this rigorous analysis, the Court may not depart from the "usual rule that litigation is conducted by and on behalf of the individual named parties only"). "Rule 23 does not set forth a mere pleading standard." *Dukes*,  564 U.S at 350. Rather, "a party seeking class certification must affirmatively demonstrate her compliance with the Rule - that is, [he] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551.

Class certification under Rule 23 is a two-step process. First, a plaintiff must demonstrate that all four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). Here, because he relies on Rule 23(b)(3), Plaintiff must establish with "evidentiary proof" that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (listing other issues pertinent to this inquiry, including "the likely difficulties in managing a class action"); *Comcast*, 133 S. Ct. at 1432 ("The party [seeking class certification] must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).").

## ARGUMENT

## I.   PLAINTIFF CANNOT ESTABLISH THE ADEQUACY OR TYPICALITY PREREQUISTES OF RULE 23(a)

### A.   Plaintiff Is Not An Adequate Class Representative

A proposed class representative is adequate if he "will fairly and adequately protect the interests of

the class." F.R.C.P. 23(a)(4). The Ninth Circuit has explained that a representative meets this standard if he (1) has no conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The adequacy requirement lies at the heart of the rationale supporting class actions. *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122–23 (9th Cir. 2014) (noting that "named plaintiff's and class counsel's ability to fairly and adequately represent unnamed [plaintiffs]" are "critical requirements in federal class actions under Rules 23(a)(4) and (g)"); *In re Amer. Exp. Steering Rules Antitrust Litig.*, 2015 WL 4645240, at *12 (S.D.N.Y. 2015) ("The adequate representation requirement 'lies at the heart' of the rationale supporting class actions."). Critically, class certification cannot be granted if "the putative lead plaintiff gives the court any reason to doubt the ability to meet these fiduciary obligations." *In re Quintus Secs. Litig.*, 148 F. Supp. 2d 967, 970 (N.D. Cal. 2001) (emphasis added).

Here, the facts here show that (i) Wuest has significant conflicts of interest based on his prior litigation history and his history of calls with My Pillow and (ii)  based on his litigation history of taking ▮▮▮▮▮▮▮▮▮▮▮▮ each and every time he has served as a class representative, Wuest clearly will not prosecute the action as a fiduciary.

Wuest's prior litigation history and his individual settlements cast a shadow over his entire claim, his credibility, and his motives.  That litigation history suggests, if not outright demonstrates, that Wuest is akin to a "bounty hunter" who uses CIPA and the class action device to target a variety of companies for his own personal benefit.  This litigation history is significant and, in and of itself, raises many questions of Wuest that are unique to him and him alone, such as:  (a) his reasons for settling class actions on an ▮▮▮▮▮▮▮▮▮▮▮▮); (b) his reasons for ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮; (c) his reasons for ▮▮▮▮▮▮▮▮▮▮; and (d) the appearance that he uses the class action device solely to benefit himself, at the expense of the class that he purportedly seeks to represent.  These types of issues, alone, will occupy this litigation to the point where Wuest cannot serve as a fiduciary for the class.

In *Backus* 2016 WL 7406505 (N.D. Cal. Dec. 22, 2016), this Court analyzed a nearly identical situation involving a class representative who had filed at least five other class actions over the exact conduct at issue in the suit against Conagra.  The Court reasoned that the plaintiff's extensive litigation

1  history made plaintiff inadequate: "ConAgra has utilized, and would predictably continue to utilize, a

2  defense strategy based in large part on attacking Backus's credibility and motives in light of his litigation

3  background. Such defenses 'threaten to become the focus of [this] litigation' but are not typical of defenses

4  that would generally be raised against other members of the putative class."  2016 WL 7406505, at *4

5  (citations omitted).  Such is exactly the case here.

6      My Pillow will present defenses that Wuest is not an "aggrieved" party and has shirked his duties

7  to class members for an individual payment on ten previous occasions. Farnese Decl. Exs. 13 - 33; Wuest

8  Depo, 30:16-23.  Wuest's ██████████████████████████████████████████████████

9  ████████████████████████████.  Farnese Decl. Ex. 3; Wuest Depo, 15:8-9.  His true motivation is not

10  to remedy any "privacy" violation or injury, but to collect statutory damages.  Indeed, he stated as much

11  under oath: "████████████████████████████████████████."  Wuest Depo. 51:1-11.  Wuest

12  is simply not qualified to act as a proper fiduciary for the class.  *See, e.g,* Dkt. 11 at ¶1.

13      In anticipating My Pillow's argument, Plaintiff devotes a large portion of his brief and his

14  declaration to point out that were various reasons that his prior suits could not proceed on a class basis. In

15  all of those settlements (which will be tested further, as this litigation proceeds), however, Plaintiff could

16  have required, at a minimum, an injunction to ensure any CIPA violation did not reoccur and/or notice be

17  provided to absent class members of the dismissal so that they too could pursue their own claim.  *See, e.g.,*

18  Cal. R. Ct. Rule 3.770 (discussing notice to absent class members in the dismissal of an action if a class

19  has not yet been certified). He did not.  Instead, he obtained benefits for himself and punted the class "to

20  the curb."  Those issues will undoubtedly be the focal point of this litigation and create indisputable

21  conflicts of interest between Wuest and the class.

22      Plaintiff makes additional attempts to head off these arguments by arguing that Wuest's familiarity

23  with the claims and statutes at issue is a plus for the class. Dkt. 32, pp. 16-17.  But, Plaintiff's "savvy" is

24  exactly what makes him atypical. Wuest's prior litigation and knowledge of CIPA is a unique defense that

25  impacts Wuest's credibility and motives and will prejudice the class on the key issues in this case.  Namely:

26  - Whether Wuest's statement that he never heard a recording advisement on his January 22, 2018 calls to 800-544-8939 is accurate;

27
28  - Based on his admitted practice of calling companies if he suspects he did not hear a call recording on a prior call in order to confirm his suspicion for the purposes of filing a lawsuit, did Wuest know before he made any calls that businesses like My

Pillow record sales and/or customer service calls?

- Why did Wuest call My Pillow multiple times in February after he was told that calls are recorded and had retained counsel to file a lawsuit against My Pillow ?  To simply "pad" his damages claim?

Just as the plaintiff in *Backus* was not adequate, Wuest is not adequate here.  His credibility is too impaired, his motives are too subject to challenge, and his litigation history is too questionable.   In the words of this Court, "[t]he present issue is not whether [Wuest can] bring a [CIPA] claim but whether *he* should be permitted to assert that claim on behalf of a class." *Backus* at *5 (emphasis added).  Wuest's significant litigation history demonstrates, conclusively, that he should not be so permitted.[9]

## B.   Plaintiff's Claims Are Not Typical.

Courts have explained that a party being subject to unique defenses will render that party atypical and inadequate. *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.") (further citations omitted); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 344 (C.D. Cal. 2015) ("Unique defenses can go to either the typicality or adequacy of class representatives."); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 323 (C.D. Cal. 2015) ("[W]here a class representative is subject to unique defenses, typicality may not be satisfied.").  Indeed, as this Court stated in *Backus*:  "The rub is that class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Backus*, 2016 WL 7406505, at *5–6 (citing *Hanon*, 976 F.2d at 508).  Such is the case here.

First, as noted above, Wuest's prior CIPA litigation history makes him subject to unique defenses that render his claims atypical, and him inadequate.   Similar to the plaintiff in *Backus*, Wuest's litigation history, among other things, might allow a jury to infer that Wuest is "not truly an aggrieved consumer," but rather a semi-professional plaintiff.

Second, Wuest's call history with My Pillow raises significant questions and defenses centered

---

9    Although My Pillow does not dispute that Plaintiff's counsel is qualified, there are potential issues related to Mr. Grover's service as class counsel.  In his motion, Plaintiff disputes that he was given a call recording warning as part of the greeting message when he called My Pillow's sales toll-free number.  Plaintiff's only other witness attesting to that fact is Mr. Grover.  *See* Farnese Decl. at Ex 11. Obviously, Mr. Grover cannot serve as a key fact witness at trial and as class counsel.  *See* Cal. R. Prof. C. Rule 3.7 ("A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness").

around whether Wuest actually consented to being recorded by My Pillow, for at least three (3) of the calls for which Wuest seeks "statutory damages" in this case.  Indeed, it is undisputed that on January 22, 2018, Wuest was told, point blank, that the Company records the calls, and that, at that same time, he responded by saying "Okay.  All right.  Thanks."  It is not undisputed that Wuest formally retained counsel on February 7, 2018, made three additional telephone calls to My Pillow after that, and now seeks statutory damages for two of those calls.  Among the unique and atypical issues raised by that chronology are:

- His actual knowledge that one of his January 22, 2018 calls was recorded, and that all of his subsequent calls were recorded, and how that knowledge is sufficiently distinct from a proposed class of individuals who may not know that they were being recorded; and,

- Whether his "Okay… All right. Thanks" response to the call recording advisement coupled with his subsequent calls to My Pillow after he retained counsel, constitutes express or implied consent under CIPA for all his calls, his February calls to customer service, or both.

These two issues are indisputably distinct to Wuest and atypical of the class's claims.  Perhaps more significantly, those issues raise questions as to whether Wuest is even a member of any class he seeks to certify.  Plaintiff proposes to certify a "sales and customer service" class, as well as "sales" and "customer service" sub classes under Penal Code §632.7.  However, it is well-settled that a caller is not a member of the proposed class if he or she consented to any recording, as "consent is a complete defense to a Section 632.7 claim." *Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1146 (C.D. Cal. 2015), *aff'd in part, dismissed in part,* 680 F. App'x 554 (9th Cir. 2017) (noting, as well, that "a warning at the outset of the call is not required to comply with Section 632.7").

Consent may be express or implied from the surrounding circumstances. *See NEI Contracting & Eng'g,Inc. v. Hanson Aggregates Pac. Sw., Inc.,* 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) ("Consent may be express or may be implied in fact from the 'surrounding circumstances indicating that the party to the call knowingly agreed to the surveillance.'") (internal alterations omitted)).  Here, the surrounding facts and circumstances demonstrate that Wuest may have consented to the recording of all of his calls to My Pillow.  In addition to his litigation history and his My Pillow call chronology set forth above, it is undisputed that Wuest is well versed in CIPA law and testified that based on his knowledge he understands that before he calls a business his call is being recorded (at least some of the time) whether or not a recording advisement is given.  *See* Wuest Depo, 36:23-37:2.  At a minimum, these facts demonstrate that My Pillow can raise significant, distinct issues with respect to whether Wuest consented to being

recorded by My Pillow, which is an absolute defense that is unique to Wuest.  *See NEI Contracting & Eng'g, Inc.*, 2016 WL 4886933, at \*4 (CIPA §632.7 claim failed because, among other reasons, caller did not object to being recorded and "does not dispute that he would have consented to the recording if he had known [Defendant] was doing so.").

In sum, Plaintiff's claims are atypical of the class claims in numerous respects.   Whether it is questions about (a) his litigation history, (b) his knowledge of CIPA, (c) his apparent consent to being recorded, or the litany of other questions that these facts raise, it is clear that Wuest's claim is atypical, and My Pillow's defenses to it are unique.  For that reason, Wuest cannot, as a matter of law, serve as a class representative, and his motion to certify the class should be denied.

## C.   Wuest Cannot Represent Customer Service Callers

It is not disputed that all of Wuest's calls to My Pillow's Customer Service Number (800-308-1299) were made after Wuest was told that he was being recorded, and after he responded by saying: "Okay. I already placed my order and I'd just like to ask them about that. All right.   Thanks."     Farnese Decl. Ex . And, as discussed in *Maghen v. Quicken Loans Inc.*, 680 F. App'x 554 (9th Cir. 2017), an "Okay" response like Wuest's is sufficient to consent to the recording of the call, as well as future calls. Specifically, as set forth in that case:

> Maghen replied by saying, "Okay." ... and demonstrated his consent to having the call recorded by saying, "Okay." Maghen also consented to having the second call recorded, because he was informed during the first call that all of Quicken Loans' calls were recorded, he knew Quicken Loans was the party calling him, and he stayed on the line.

*Maghen*, at 555–56.

Here, Wuest cannot serve as an adequate class representative for the customer service subclasses or represent a class that includes the customer service number, as he consented to the recording of those calls, and is therefore atypical of the class. *See, e.g., Mckinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-04457-YGR, 2016 WL 879784, at \*9 (N.D. Cal. Mar. 8, 2016)(plaintiff not a member of class is inadequate and even if his class membership was "inconclusive, the typicality requirement of Rule 23(a) would not be satisfied because it is 'predictable that a major focus of the litigation will be on a defense unique to' [plaintiff]…"(citation omitted)).

**D.      Wuest Is Not a Member of the Cordless Class**

Finally, it is not disputed that Wuest only called My Pillow from his cell phone, not a cordless phone.  Wuest Depo., 55:2-5; Farnese Decl. Ex. 5. "A named plaintiff must be a member of the class she seeks to represent…." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018), *cert. dismissed,* 139 S. Ct. 1651 (2019) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Wuest is not a member of a class of cordless phone callers and cannot represent such a class (or the proposed standalone "cordless" subclasses). *See Mckinnon*, *supra*, 2016 WL 879784, at *9.[10]

**E.      Summary**

As set forth above, the unique circumstances and defenses My Pillow has to Wuest's individual claim create conflicts with the proposed classes, render his claims atypical, and make him an inadequate class representative.  Those unique circumstances, which will dominate this litigation, are:

- Wuest's litigation history, and his ongoing relationship with counsel, including his dismal record of ████████████████████████, demonstrates that he will not protect the interests of absent class members;

- His experience and knowledge with CIPA, its provisions, and his expectation (at least some of the time) that businesses record calls;

- He called My Pillow only from a cell phone only, not a cordless phone;

  His call history with My Pillow, including his actual knowledge of call recording and subsequent calls to the company;

- His testimony regarding his practice of calling companies if he suspects he did not hear a call recording on a prior call in order to confirm his suspicion for the purposes of filing a lawsuit;

- His testimony that he was not physically, or mentally, injured by My Pillow's call recording and only seeks statutory penalties, not actual damages (see Wuest Depo., 52:11-23);

- Whether his "Okay… All right. Thanks" response to the call recording advisement coupled with his subsequent calls to My Pillow after he retained counsel, constitutes express or implied consent under CIPA for all his calls, his February calls to customer service, or both.

The motion for class certification should be denied based on Plaintiff's inability to satisfy the adequacy and typicality requirements of Rule 23(a).

---

[10] Relying on *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014), Plaintiff argues that he is typical of cordless phone callers because the factual and legal issues are "the same" under the statute for both. *See* Dkt. 32 at 15.  But *Parsons* does not help Plaintiff overcome the black letter rule that he must be a member of the class he seeks to represent. *Parsons* is a case involving the Arizona prison system's policies for prisoner medical and mental health care that has no applicability the facts here. Regardless, plaintiffs in *Parsons* were all "prisoners" under the class definition and sought certification under the less stringent Rule 23(b)(2) standard designed for comparable civil rights actions. *Parsons*, 754 F.3d at 686.

## II.    PLAINTIFF FAILS TO ESTABLISH COMMONALITY (RULE 23(a)(2)) OR PREDOMINANCE (RULE 23(B)(3))

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "That language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.' " *Wal-Mart*, 131 S. Ct. 2541, 2551 (*quoting* Nagareda, Class Certification in the Age of Aggregate Proof, 84 N. Y. U. L. Rev. 97, 131-132 (2009).).  Properly interpreted, commonality requires that each of the putative class member's claims "must depend upon a common contention" and that common contention "must be of such a nature that is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "What matters to class certification ... is not the raising of common 'questions' - even in droves - but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id. (quoting Nagareda, supra*, at 132.)

The predominance requirement is similar to the commonality requirement of Rule 23(a)(3), but more rigorous. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Over-time Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In this case, they are not.

As discussed herein, there are numerous individual issues with respect to Plaintiff's Section 632.7 claim involving, among other things: 1) Whether a caller consented to call recording; 2) Ascertaining the identity of the caller (versus the phone subscriber or owner); 3) Identifying the type of device used (cellular versus cordless versus landline or VoIP); 4) Ascertaining the physical location of the caller when the call was made; and 5) Ascertaining whether a caller was connected to a representative.  None of these questions can be answered on a class-wide basis under the facts of this case, and instead require an individual, and largely self-identifying assessment as to each caller and each call. *Comcast*, 133 S. Ct. at 1432 (citing *Amchem Products, Inc. v. Windsor*, 521 U. S. 591, 623–24 (1997)).

### A.    Individual Issues Predominate As to Consent

In *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013), the plaintiff brought claims under

both sections 632 (the confidential land-line section, not at issue here) and 632.7 (at issue here) and sought to certify a class of persons in California whose telephone calls were recorded. *Id.* Ms. Torres received a recorded warning during an initial call, but then called back again and did not receive a warning. The *Torres* court found certification inappropriate because, as opposed to a unified class, there would instead be: (1) callers who did not hear the warning message on the recorded call but had heard it on a previous call; and (2) callers "who never heard the Disclosure, but actually expected the calls to be recorded," and those callers may have implicitly consented to recording simply by the act of placing the call. *Id.* at 593-594. Certification was denied because a detailed factual inquiry was required to determine whether and how each class member consented (or not) to the recording. *See id.* That is exactly the case here.

As noted above, "consent is a complete defense to a Section 632.7 claim," *Maghen* at 1145 (C.D. Cal. 2015). Plaintiff cites to *Kearney* to imply that consent may only be obtained by providing a call warning at the outset of a call (*see* Motion at p. 6), but consent may be express or implied from the surrounding circumstances. *See NEI Contracting & Eng'g,Inc.,* 2016 WL 4886933, at *3. Thus, courts have observed that "[i]mplied consent is an intensely factual question that requires consideration of the circumstances . . . .". *In Re Google Gmail Litigation*, 2014 U.S. Dist. LEXIS 36957, at *56 (N.D. Cal. Mar. 18, 2014).  Indeed, in some circumstances, "callers who never heard the [Recording] Disclosure, but actually expected the calls to be recorded, *may have implicitly consented to the recording by the very act of making the call*." *Torres*, 289 F.R.D. at 594 (emphasis added).

In *Torres*, plaintiff argued, as Wuest does here that "commonality is 'easily satisfied' because 'this case is based on Defendant's identical conduct, which caused the same injury to both Plaintiff and Class Members.'" *Id.* at 591.  The court rejected that argument, stating:  "[T]he answers to these questions are likely to vary significantly among class members given that the confidentiality **and consent issues** require individualized factual inquiries into the circumstances of each class member." *Torres, supra*, 289 F .R.D. at 592 (emphasis added).

And, just as Wuest does here, Torres also argued that "there are actually only two questions relevant to show commonality: (1) whether each class member's call was recorded and (2) whether the class member's call was recorded without disclosure of such recording." *Id.* at 592, fn. 2.  These arguments were rejected with the *Torres* court stating:  "These questions, however, are comparable to

those rejected by the Supreme Court in *Wal-Mart* and therefore are not sufficient to show commonality. The driving force in this case will be the litigation of the confidentiality **and consent issues**, which are not common to all class members." *Torres*, supra, 289 F.R.D. at 592, fn. 2 (emphasis added).[11]

This case is no different.  Indeed, Wuest's own unique circumstances, set forth in detail above, highlight the individualized nature of the consent inquiry.  A review of each recording, call history, and testimony from each caller is needed to determine whether there was implied consent.  For instance, My Pillow's records show that of the 4,478 calls to the customer service line, 1,086 calls are associated with telephone numbers that had previously called My Pillow prior to any outgoing message change on December 27, 2017.  Farnese Decl., Ex. 10.  My Pillow is entitled to argue that even if no warning was provided via pre-recorded greeting, those callers may have provided implied consent based on their prior calls.  *See Torres* 289 F.R.D. 587, 594.  Given the stakes of the statutory penalties, a class member's need to prove a lack of consent, and My Pillow's due process right to cross examine each of these callers, would "splinter" the class into thousands of mini-trials, destroying commonality, just as the Court found in *Torres*.  For that reason, and set forth in Section I, above, Wuest's motion should be denied.

**B.    CIPA § 632.7 Applies to "Parties" to the Communication**

CIPA section 632.7 applies only to "parties" on the communication.  Thus, a putative class member must be someone who actually called My Pillow. But Plaintiff proposes no workable way to identify the caller; rather, Plaintiff and his experts simply propose a method to look up the owner or subscriber of the telephone number, which is not necessarily the same as the "caller".  Plaintiff's testimony exemplifies this point.  Wuest testified that he, like many people, has a cell plan with multiple lines in his name: "[T]here are lines in my name for my daughter and my mom and dad's lines are in my name…" Wuest Depo at 77:20-21.  If Wuest's mother had called, Plaintiff's methodology would identify Wuest as the subscriber or owner of the telephone number.  But under Section 632.7, Wuest's mother, not Wuest is the class member.  Notice to the account holder and subsequent self-identification by the caller will not work either.  For instance, Plaintiff testified that he would not be able to recall simply by looking at his phone bill

---

[11]   Implied consent to call recording must also involve inquiry into an individual caller's previous experiences with toll-free calls to other businesses and consumer products companies. *See Hataishi*, 223 Cal. App 4th at 1459 ("Plaintiff also confirmed that she had participated in 'dozens and dozens and dozens' of telephone calls with companies where she understood her call could be recorded or monitored for quality assurance"); *see also* Wuest Depo., 55:2-5.

whether or not a specific toll-free number he dialed corresponded to a specific company or whether he or someone else placed the call. Wuest Depo., 43:14-44:14. Ultimately, this issue too, will require individual testimony from each class member.

### C.       Identifying the Type of Device Used

The device type is essential for class certification because §632.7 only covers cellular and cordless telephones, not landlines or VOIP[12]. Neither My Pillow, nor any of Plaintiff's experts, can distinguish between a landline or a cordless phone. Although My Pillow's records may be used to determine whether a particular number is a cellular or "non cellular" number, there is no way other than individual testimony from each class member to determine whether a particular device falls into the "cordless" category. Larson Depo 171:14-19 (records only discern between cellular and "non-cellular"). Plaintiff's experts agree. They propose self-identification as the way identify cordless class members. *See* Dkt. No. 32-7 ¶¶63-66. But, individual self-identification is not an effective way to establish class membership because it will involve subjective, years-after-the-fact determinations, with the incentive that the "correct" answer provides the subscriber with $5,000 in penalties per call. The device distinction is critical. For instance, if a caller's device is a landline, but not a cordless telephone, that caller can only make claims under Penal Code §632 (which requires a showing of confidentiality), not §632.7 (which does not). Again, an issue that requires individual determination.

### D.       Ascertaining the Physical Location of the Caller

As required by section 632.7, Plaintiff's proposed class must have called My Pillow while physically present in California. Although My Pillow's records may indicate the caller's cellular number, the company does not have location data for those callers. There is no objective way to verify that a cellular caller called a My Pillow toll-free while physically located in California. The only way to possibly determine this information is to through a highly individualized inquiry. Plaintiff and his experts propose that this information can be subpoenaed from cell carriers, if necessary, or otherwise handled by self-

---

[12]  As Plaintiff points out, the parties disagree as to whether VOIP is a "landline" under section 632.7. VOIP is a different technology than a landline, cellular or cordless telephone. It is not covered by the statute. In *Gruber v. Yelp, Inc. et al.*, Case No. A155063 (Cal. Ct. App. Div. 3), the California Court of Appeal will address whether the *Yelp* trial court properly granted summary judgment in holding that Cal. Penal Code §632.7 does not apply to calls involving a VOIP system. My Pillow uses a VOIP system and intends to move for summary judgment on this issue, but it also it affects class certification because there simply would be no class to certify.

identification.  But, they fail to specify if either expert has *ever* performed such a search in certified CIPA class action or if either has done so for Plaintiff's cell phone calls to My Pillow to verify the proposed cellular carrier subpoena method actually works.  Finally, in a case that involves privacy rights, would absent class members consent to such highly confidential information being accessed by third parties?

### E.   "Who Was Connected to a My Pillow representative"

This aspect of Plaintiff's class definition also requires individual testimony and is not objectively verifiable. My Pillow's records indicate that several callers were a "wrong number" or solicitor." But as Mr. Larson testified, those calls, although connected to a representative, may not have involved a person: "It could also be, [] an auto dialer where people are using an auto dialer and then the agent picks up and realizes that it's a mechanical call instead of an actual person…" Larson Depo 168:6-16.  In other words, Plaintiff's class definition is overbroad and requires an individualized inquiry for each call to determine whether or not they were answered by a representative.

### F.   Summary

In sum, significant individual issues preclude a finding of commonality and predominate over class issues.  Those individual issues are: consent, device type, physical location, whether the call was an auto dialer, and whether the account name associated with a particular telephone identifies the actual caller to My Pillow.  For those reasons, Plaintiff's motion for class certification should be denied.

## III.   PLAINTIFF'S PROPOSED CLASSES ARE NEITHER MANAGEABLE NOR SUPERIOR

Rule 23(b)(3) requires a finding that a class action is superior to other available methods of adjudication, in light of (1) class members' interests in individually controlling their claims, (2) the extent and nature of any litigation already begun by class members, (3) the desirability of concentrating the litigation in a particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

### A.   A Class Action Is Not Superior

Plaintiff must prove that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FRCP 23(b)(3).  Here, he cannot do so, as a class action is not superior to individual suits.  First, proceeding as a class action here would be unfair and bring about

undesirable results.[13] "Courts have discretion under Rule 23 to decline to certify a class action [on superiority grounds] when it would bring about 'undesirable result[s].'" *Vasquez-Torres v. McGrath's Publick Fish House, Inc*., 2007 U.S. Dist. LEXIS 97233, at *16 (C.D. Cal. Oct. 12, 2007) (quoting Rule 23 Advisory Committee Notes (1966)).  The penalties Plaintiff is seeking to impose through certification would be ruinous to My Pillow (17,543 total California calls times $5,000 equals $87,715,000.00) and lacks any relation to the actual alleged harm.  That is particularly true here where the evidence shows that My Pillow made an innocent oversight for a short period, did not act with bad faith or malice, and no caller suffered actual damages. Moreover, legislative history of CIPA indicates that a company's recording of calls for quality assurance was not meant to be covered by the statute. *Kline v. Coldwell Banker & Co*., 508 F.2d 226, 234-35 (9th Cir. 1974) (a class action is not superior if it seeks "outrageous amounts in statutory penalt[ies]" such that it leads to an "absurdum result.").

Second, in assessing superiority, one factor courts must analyze is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190 (9th Cir. 2001). Here, however, the recovery for each putative class member is significant. [14]  Each viable claim is subject to a $5,000 statutory penalty that can be aggregated to result in a substantial individual claim.  For instance, Plaintiff Wuest seeks at least $25,000 in statutory damages for himself.  This is no small sum; ███████ ████████████. Wuest Depo., 15:8-9. That amount is certainly large enough to warrant the interest of each class member.

Finally, Plaintiff claims that failure to certify the case will "turn Defendant's Penal Code violation in the perfect crime" and most class members will never know that "their rights have been violated." Dkt 32 at p. 24.  But, however laudatory the goal of CIPA may be, "[courts] cannot employ class action rules

---

[13]  "Courts bear a significant responsibility to ensure that the great power wielded by plaintiffs (or more accurately their counsel) carrying the cudgel of a class action is used only in appropriate cases." *Legge v. Nextel Comm'n., Inc*., 2004 WL 5235587, *13-*14 (C.D. Cal. Jun. 25, 2004) (citing *Ratner v. Chemical Bank New Trust Co*., 54 F.R.D. 412, 416 (S.D.N.Y. 1972).

[14] The $5,000 statutory penalty amounts to nearly one-tenth the median household income ($67,169) in California. *See* U.S. Census Bureau, Quick Facts California 2013-2017 (accessible at: https://www.census.gov/quickfacts/fact/table/CA/INC110217#INC110217).

1   to achieve a public policy objective if the class procedures would eliminate a plaintiff's burden of proving

2   a statutory element and/or interfere with the defendant's right to challenge the plaintiff's evidence." *Kight*

3   *v. CashCall, Inc.*, 231 Cal. App. 4th 112, 131, 179 Cal. Rptr. 3d 439, 454 (2014).  With respect to notice

4   to class members, that argument should be taken with grain of salt coming from Mr. Wuest.  After all, he

5   does not dispute that he previously settled ten other CIPA cases with no notice of the alleged violation or

6   dismissal to proposed absent class members.

7        **B.        The Proposed Class Is Not Manageable**

8        As described above, the proposed class is not (and cannot) be defined using objective criteria.

9   Given the countless individual inquiries, Plaintiff proposes as a solution that a Special Master can be

10  appointed after the case has been certified so that My Pillow may challenge an aspect of a class members'

11  claim.  But, unlike the cases cited by Plaintiff which deal with calculation of damages, the individualized

12  issues here go to the statutory elements of the claim itself for each class member.[15]

13       For instance, Plaintiff's proposed manageability methodology is not administratively feasible with

14  respect to the consent element. As described above, 1,086 calls are associated with numbers that had

15  previously called Defendant prior to the outgoing message change. My Pillow has a due process right to

16  cross-examine each of these callers as to as to their consent or knowledge of any recording of their calls.

17  In other words, the action will splinter into 1,000-plus mini trials and undermine the very purpose of the

18  class action device. In this case, a class is not superior given the individual issues, the lack of objective

19  methodology for class membership, and My Pillow's due process rights to assess and cross-examine class

20  members. *Zinser*, 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate

21  issues to establish his or her right to recover individually, a class action is not 'superior.'")

22

23  ───────────────

24  [15]   In addition, Plaintiff fails to provide any choice of law analysis to demonstrate that California law
    should apply. My Pillow and its call center are located in Minnesota and its Skyswitch system has data

25  centers in Minnesota, Texas, New Jersey, and Nevada. Larson Depo 33:4-24. Each has its own call
    recording laws, many of which differ substantially from CIPA. The California Supreme Court, in

26  *Kearney* (39 Cal. 4th at 122-123), assessed application of CIPA's consent requirements versus
    Georgia's recording law. Although it determined CIPA applied, the court did not reach the issue of

27  whether awarding statutory damages conflicted with Georgia law. An individualized choice of law
    analysis would have to be performed to determine whether each class member could be awarded

28  statutory damages.

## IV.     THE EXPERT REPORTS ARE NOT HELPFUL FOR CLASS CERTIFICATION[16]

Plaintiff's expert opinions focus on the Rule 23(b) factors and class notice.  But because Plaintiff is clearly not an adequate class representative and fails to establish the Rule 23(a) factors, these expert opinions need not (and should not) be considered by the Court.  *Backus.* 2016 WL 7406505 at *5-6.  To the extent the reports are considered, "a district court should evaluate admissibility under the standard set forth in *Daubert*" for expert testimony offered at the class certification stage. *McCurley v. Royal Seas Cruises, Inc.*, No. 17-CV-00986-BAS-AGS, 2019 WL 1383804, at *6 (S.D. Cal. Mar. 27, 2019) (citations omitted).  Each report is not "based on sufficient facts or data"; "the product of reliable principles and methods" and the experts did not "reliably applied the principles and methods to the facts of the case." *See* Fed. R. Evid. 702.

### A.     Randall Snyder

Mr. Snyder's opinions are based on total speculation.  Indeed, Snyder's similar opinions in TCPA and junk fax cases have been excluded by other courts. *See, e.g., Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV-COHN, 2014 WL 1767097 (S.D. Fla. May 2, 2014).[17] Mr. Snyder states that he can verify a number is a cellular phone and speculates that he then could obtain cellular location data through subpoenas to cellular carriers for each cellular number called in My Pillow's records. Dkt. 32-8. But his report carefully omits (and he has testified in other actions) that he has never actually performed this large scale analysis in a CIPA case.[18] Snyder's report confirms that he did not perform this test using Plaintiff's cellular number to confirm the process works or if this data actually still exists for class members. His report contains general conclusions about the types of data that may or may not be available, but lacks any reliable basis to conclude that data for a cellular number that called My Pillow over one year ago exits, can actually be obtained from the carriers, and can accurately traced to a specific

---

[16]   Although there was no specific court ordered deadline, Plaintiff did not disclose the identities of either expert or otherwise update his Rule 26 disclosures prior to filing his motion.  Given the time constraints, My Pillow did not depose these experts prior to its opposition. My Pillow reserves the right to depose or otherwise take discovery from each expert. If the Court considers these opinions, My Pillow requests the opportunity to provide additional briefing and its own rebuttal experts.

[17]   *See also Marshall v. CBE Grp., Inc.*, No. 216CV02406GMNNJK, 2018 WL 1567852 (D. Nev. Mar. 30, 2018); and *Dominguez v. Yahoo!, Inc.*, No. CV 13-1887, 2017 WL 390267, at *1 (E.D. Pa. Jan. 27, 2017), *aff'd sub nom. Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018).

[18]   *See* Snyder Deposition, Farnese Decl. Ex 40.

geographic location using cellular carrier data.[19] Last, his report provides no way (nor can it) to determine the actual caller as is required under CIPA §632.7. Snyder's opinion should not be considered. If anything, however, the opinion confirms that myriad individual issues affecting the proposed class.

### B.      Anya Verkhovskaya

Ms. Verkhovskaya is primarily a class action settlement administrator. Her report largely focuses on reverse look-up procedures to provide notice to proposed class members. But she confirms that, absent self-identification, there is no way to objectively determine the actual caller, but only the subscriber or owner of the cellular number. Verkhovskaya's methodology is premised on numerous assumptions about the existence of certain records, what information they might contain, and how they might be used in conjunction with a telephone number. But Verkhovskaya provides nothing in her report that she has actually tested or confirmed her assumptions with the phone number data in this case, or even Mr. Wuest's own phone number. Her report confirms that a reverse look-up procedure, even if viable, does not address issues related to the identity, location, state of residence, what device was used by the actual caller. The class settlement context is much different because, as opposed to a contested action, issues of manageability, superiority, and ascertainability are generally not the focus of the parties or the court. In short, Ms. Verkhovskaya's report states what she hypothetically[20] could do if provided a My Pillow's list of telephone numbers for the relevant time period. It is speculation and should not be considered.

## CONCLUSION

As set forth above, My Pillow respectfully requests that the Court deny Plaintiff's motion for class certification.

DATED: May 31, 2019                          **BESHADA FARNESE LLP**

                                             By:      _/s/Peter J. Farnese_____
                                                      Peter J. Farnese

                                             Attorneys for Defendant My Pillow, Inc.

---

[19]   Snyder's opinion confirms that individualized inquiry is necessary to identify whether a specific cellular number was used to call My Pillow while the caller was in California.

[20] *See Southwell v. Mortgage Investors Corp. of Ohio, Inc*., Case No. C13-1289-MJP, 2014 WL 3956699, at *4 (W.D. Wash. Aug. 12, 2014) ("Ms. Verkhovskaya's declaration is entirely prospective") *See also* Verkhovskaya Deposition, Farnese Decl., Ex. 41.

## **CERTIFICATE OF SERVICE**

I hereby certify the on May 31, 2019, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the email addresses registered in the CM/ECF system.

*/s/Peter J. Farnese*
Peter J. Farnese

BESHADA
FARNESE LLP