IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WUEST, on behalf of himself and all others similarly situated individuals,<br><br>    Plaintiff,<br><br>  v.<br><br>MY PILLOW, INC., and DOES 1 through 50, inclusive,<br><br>    Defendants. | No. 18-03658 WHA<br><br>**ORDER ON MOTION FOR CLASS CERTIFICATION AND MOTION TO SEAL** |

**INTRODUCTION**

In this putative privacy class action, plaintiff moves for class certification and defendant moves to file under seal. For the reasons stated below, the motion for class certification is **DENIED**. The motion to file under seal is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

This is a putative class action by plaintiff Richard Wuest against defendant My Pillow, Inc. Wuest asserts a single claim for violation of California Penal Code § 632.7 based on My Pillow's alleged unwarned and unconsented recording and monitoring of inbound calls and seeks statutory damages. Most of the underlying facts were developed on briefing for the instant motion and are briefly summarized herein.

My Pillow had toll-free numbers by which consumers could reach sales and customer service agents (Dkt. No. 38-2 at 16:1–17:4, 32:1–21). Up until December 27, 2017, My Pillow used a pre-recorded greetings, which informed all callers at the outset that their calls were

recorded by My Pillow for quality assurance. The post-holiday rush, however, brought an attendant influx of customer calls for exchanges and gift cards. On December 27, 2017, My Pillow briefly changed allegedly for both sales and customer service numbers the automated message to one that informed callers that, "due to very heavy call volume," they would experience "extremely long wait times" as a courtesy to its customers (Dkt. Nos. 32 at 7; 36-11 at 3). On February 19, 2018, three days after Wuest filed the instant class action, My Pillow returned the automated message to again include a call recording warning (Dkt. Nos. 32-2, Exh. B at 102:6–20; 36-11 at 3).

It was during this brief period that Wuest called My Pillow on multiple occasions. On January 22, 2018, Wuest called My Pillow's sales number three times from his cell phone, while in California, to inquire about the company's products and to place an order (Dkt. No. 32-3 at 21:11–22:14). During the first call, Wuest asked the sales representative general questions of inquiry. During the second call, Wuest placed an order. During the third call that day, Wuest asked whether My Pillow recorded such calls, which the sales representative confirmed (Dkt. Nos. 32 at 8; Grover Decl., Exhs. R–T). On February 8 and 9, 2018, Wuest called My Pillow's customer service line twice from his cell phone in California regarding the shipping status of his order (Dkt. Nos. 32-8–32-9). It is undisputed that My Pillow's customer service line did not warn customers of the call recording during that time (*see* Dkt. No. 36-11 at 3).

Wuest subsequently filed the instant action on February 16, 2018. He now seeks to represent those who called My Pillow during the time period at issue. He has filed ten prior CIPA class actions but always settled them before moving for class certification (*see* Dkt. No. 44 at 1–2). This is the first of his cases ever to reach the class certification stage. He seeks to certify the following class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) (Dkt. No. 32 at 2):

> Certifying a class (the "Class") of all persons who, at any time during the period from December 27, 2017 through February 19, 2018, inclusive, called one or more of My Pillow, Inc.'s ("Defendant") toll-free telephone numbers using a cellular or cordless telephone with a California area code while located within the State of California and who was connected to a My Pillow representative.

Wuest also seeks in the alternative to certify certain subclasses.

In opposing the class certification motion, My Pillow contends that Wuest is an inadequate class representative with atypical claims (Dkt. No. 36). It further opposes on the ground that individual issues would predominate. This order follows full briefing and oral argument.

**ANALYSIS**

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) has been met. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013). Rule 23(a) considers whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." This order holds that Wuest cannot be trusted to fairly and adequately protect the class.

A proposed class representative is adequate if he "will fairly and adequately protect the interests of the class." Rule 23(a)(4). Our court of appeals has explained that a representative meets this standard if he (1) has no conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotations omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

3

"[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)). This principle holds true "[r]egardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation." *Gary Plastic Packaging Corp.*, 903 F.2d at 180; *see also Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 577 (C.D. Cal. Jan. 25, 2016) (Judge David Carter) ("Unique defenses can go to either the typicality or adequacy of class representatives.").

My Pillow attacks the adequacy of Wuest's representation and typicality of his claims by highlighting Wuest's prior CIPA litigation history and his multiple calls to My Pillow. These facts, My Pillow contends, show that Wuest "has significant conflicts of interest"; that he would not prosecute the instant action vigorously, as he has a "history of taking individual payoffs and dismissing class claims each and every time he has served as a class representative"; and that he remains vulnerable to unique defenses, thereby rendering his claim atypical and his representation inadequate (Dkt. No. 36 at 11, 13). My Pillow argues that Wuest's litigation history shows that Wuest "has shirked his duties to class members for an individual payment on ten previous occasions," thereby "cast[ing] a shadow over his entire claim, his credibility, and his motives" such that he cannot act as a proper fiduciary for the class (Dkt. Nos. 36 at 11–12; 35-6 at 30:17–23). This order agrees.[1]

Wuest settled ten of his eleven prior putative class actions — all of which (except for one) were CIPA actions — on an individual basis, which amounted to zero dollars for the putative class (*see* Dkt. No. 44 at 1–2).[2] None of those actions reached the class certification

---

[1] My Pillow requests judicial notice of various exhibits relating to Wuest's prior litigation history and the history of CIPA (Dkt. No. 37). A court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). Accordingly, the request for judicial notice is **GRANTED**.

[2] Wuest has brought twelve class actions in total, including the instant action. Another class action also remains pending, as discussed in the chart below.

4

stage (Dkt. No. 44 at 12). The chart below summarizes Wuest's prior actions, including (1) the amount paid to him individually and to Keller Grover LLP as part of the settlements, and (2) the number of phone calls made to each defendant (*see* Dkt. Nos. 36 at 2; 44 at 1–2; 47 at 6:3–7:8).

| Case | $ to Wuest | $ to Keller Grover LLP | # of Calls to Def. |
|---|---|---|---|
| *Wuest v. Clearwire Corporation, et al.*, Case No. C 12-05061 JD (N.D. Cal. 2012) | $5,000 | $15,000 | 10 |
| *Wuest v. BP Venture Management, Inc.*, Case No. C 13-01668 TLN (E.D. Cal. 2013)[3] | n/a | n/a | n/a |
| *Wuest v. Complete Recovery Corp.*, Case No. C 17-01674 JD (N.D. Cal. 2017) | $10,000 | $70,000 | 1 |
| *Wuest v. Comcast Corporation, et al.*, Case No. C 17-04063 JSW (N.D. Cal. 2017) | $15,000 | $175,000 | 1 |
| *Wuest v. PepsiCo* (San Francisco County Superior Court Case No. CGC-17-560169) (2017) | $10,000 | $25,000 | 2 |
| *Wuest v. Guitar Center Inc.* (Sacramento County Superior Court Case No. 34-2017-00216853) (2017) | $2,500 | $2,500 | 1 |
| *Wuest v. Purity Products Intl., Inc.*, Case No. C 17-06093 SI (N.D. Cal. 2017) | $15,000 | $55,000 | 3 |
| *Wuest v. ICON Health & Fitness (Nordic Track)* (Alameda County Superior Court Case No. RG18901957) (2017)[4] | n/a | n/a | n/a |
| *Wuest v. Asseenontvstore.com* (Alameda County Superior Court Case No. RG 18903495) (2018) | $5,000 | $5,000 | 2 |
| *Wuest v. Augusta Precious Metals* (Sacramento County Superior Court Case No. 34-2018-00233802) (2018) | $10,000 | $42,500 | 2 |
| *Wuest v. NIU of Florida, Inc.*, Case No. C 18-01587 TLN (AC) (E.D. Cal. 2018) | $10,000 | $65,000 | 1 |

Wuest claims that he "intended to pursue the other cases on a class basis" but that "facts outside his control prevented proceeding on a class basis in a number of those cases," such as discovery of arbitration clauses and financial inability to settle on a class-wide basis (Dkt. Nos. 32-6 ¶ 7; 40 at 5). He concedes that it is "completely unusual" that these allegedly showstopping "odd facts" "are all happening to the same person" (Dkt. No. 47 at 9:15–17, 10:12–13).

---

[3] This case was non-CIPA related (*see* Dkt. No. 44 at 1–2).

[4] Wuest is currently still litigating this case (Dkt. No. 47 at 7:1–5).

Wuest's litigation history is more than unusual. This order finds that it shows a pattern of using the threat of class actions to extract an undeserved premium on an individual claim. This pattern is further evidenced by the fact that in several of the cases, both Wuest and his counsel received settlement amounts disproportionate to maximum recovery allowed under the statute. In Wuest's suit against Complete Recovery Corporation, for example, Wuest received *one* allegedly illicit phone call from the defendant. His statutory maximum recovery was thus $5,000. *See* Cal. Pen. Code § 637.2. Yet Wuest received $10,000, thanks to the settlement — *i.e.*, *double* the statutory maximum amount.

Equally bad, his counsel received $70,000 in that settlement despite the lack of any statutory basis for recovery of attorney's fees. The statute in question makes no provisions for any attorney's fees. Counsel falls back on Section 1021.5 of the California Code of Civil Procedure, a private attorney general statute. It provides attorney's fees to the prevailing party "in any action which has resulted in the enforcement of an important right affecting the public interest" under certain circumstances (Dkt. No. 44 at 2–3). Specifically, it provides that "[u]pon motion, a court may award attorneys fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if . . . *a significant benefit . . . has been conferred on the general public or a large class of persons*." Cal. Civ. Proc. Code § 1021.5 (emphasis added). Putting aside the fact that no court ever awarded counsel the fees in question, no significant benefit was ever conferred on the general public on a large class of persons. The only beneficiary was Wuest himself.

This order finds that Wuest used the threat of a class action to extract a premium deal far in excess of the value of his individual case. The pattern is quite clear. The premium was something rightfully due to the "class" but no absent putative class member ever got anything. Wuest and his counsel got it all.

Courts have long been wary of such abuse of the class action device. As one district court in the Eastern District of Pennsylvania stated, "an allegation of class representation is attended by serious consequences" and "no litigant should be permitted to enhance his own bargaining power by merely alleging that he is acting for a class of litigants." *Philadelphia Elec.*

6

*Co. v. Anaconda Am. Brass Co.*, 42 F.R.D. 324, 328 (E.D. Pa. 1967) (Judge Fullam). "The classic example of such abuse is the use by a plaintiff and his attorney of class action allegations as a 'bargaining chip' to produce settlement offers which would be unwarranted by the individual claims of the representative plaintiff." *Smith v. Josten's Am. Yearbook Co.*, 78 F.R.D. 154, 168 (D. Kan. 1978) (Judge Rogers), *aff'd*, 624 F.2d 125 (10th Cir. 1980). That district court further noted that:

> In the pre-certification context, the settlement problem will often arise in the form of a motion to dismiss class allegations or to dismiss the action altogether. Either of these motions may follow a legitimate decision that a claim is atypical or meritless, but they may also be the culmination of a process in which the representative plaintiff increases his bargaining leverage by filing a class suit and then attempts to abandon the class when his personal objectives have been met. Such a use of the class action may properly be called an abuse because none of the policies underlying the creation of the device are advanced.

*Id*. at 168–69 (quoting Note, *Developments in the Law Class Actions*, 89 HARV. L. REV. 1318, 1540 (1976) (footnotes omitted)). And, as another district court observed:

> Armed with class action allegations in their complaint, and with the possibility of amendment as of right, the named plaintiffs have additional leverage when negotiating for settlements of their individual claims. This is so because the defendants might well be willing to pay the named plaintiffs a premium for the elimination of the class, a premium to which they are, of course, not entitled.

*Yaffe v. Detroit Steel Corp.*, 50 F.R.D. 481, 483 (N.D. Ill. 1970) (Judge Decker) (citing *Philadelphia Elec. Co.*, 42 F.R.D. at 328).

So too here. Plaintiff has abused the class action device whereby "the defendants might well be willing to pay the named plaintiffs a premium for the elimination of the class." *Yaffe*, 50 F.R.D. at 483. Someone who has abused the Rule 23 process in this way for his own benefit should not be put in charge of protecting a class. Wuest is liable to abuse the class action device again and to place his own interest above those of the class.

Moreover, Wuest's extensive CIPA litigation history renders him uniquely vulnerable to a defense strategy. My Pillow's opposition to the instant motion clearly foreshadows its intent to concentrate its defense on Wuest's litigation history to argue that he is "not an 'aggrieved' party and has shirked his duties to class members for an individual payment on ten previous

occasions" (Dkt. No. 36 at 12). My Pillow plans to attack Wuest's prior settlements as the litigation proceeds and paint Wuest as "a semi-professional plaintiff" (*id*. at 12–13). Such defenses would be unique to Wuest. As the undersigned judge previously held, class certification should be denied where it was clear that the defendant would have pursued "a defense strategy based in large part on attacking [the plaintiff's] credibility and motives in light of his litigation background," and a jury "might [have] infer[red] that [the plaintiff was] not truly an aggrieved consumer but a hired plaintiff executing his attorney's raids on the deep pockets of food manufacturers." *Backus v. ConAgra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 7406505, *4–6 (N.D. Cal. Dec. 22, 2016). "The rub is that class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' " *Id*. at *5 (citing *Hanon*, 976 F.2d at 508).

Accordingly, this order finds that Wuest is an inadequate class representative and an atypical plaintiff so as to preclude class certification under Rule 23(a).

\*     \*     \*

My Pillow seeks to file under seal in connection with the motion for class certification certain portions of its opposition and certain exhibits designated as confidential by Wuest (Dkt. No. 35).

In this circuit, courts start with a "strong presumption in favor of access" when deciding whether to seal records. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related" to the merits bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–99 (9th Cir. 2016). Furthermore, Civil Local Rule 79-5(b) requires administrative motions to file under seal to "be narrowly tailored to seek sealing only of sealable material." Because the underlying motion for conditional certification is more than tangentially related to the merits, this order applies the compelling reasons standard.

Wuest filed a supporting declaration stating that the information he seeks to seal relates to confidential settlement information from other lawsuits in which he was a party and which potentially contains attorney-client privileged communications. For the reasons stated during the hearing on Wuest's motion for class certification, the request to file under seal information relating to Wuest's prior litigation history is **DENIED**.

As to Exhibit 4, however, which is the retainer agreement between Wuest and his counsel, Wuest specifically seeks to seal information regarding Keller Grover LLP's (Wuest's counsel) proprietary business practices and Wuest's personal contact information (Dkt. No. 39 ¶ 5). Wuest's request to seal Exhibit 4 is **GRANTED** to the extent supported by Wuest's supporting declaration.

My Pillow shall publicly refile the documents at issue in comport with this order by **AUGUST 13 AT NOON**.

## CONCLUSION

For the foregoing reasons, class certification is **DENIED**. The motion to file under seal is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: August 6, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE